**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DENNY DEJESUS,

                        Plaintiff,

        v.                                              No. 9:20-CV-0813
                                                              (MAD/CFH)

DONALD VENETTOZZI and COREY,

                        Defendants.

---

APPEARANCES:                              OF COUNSEL:

DENNY DEJESUS
10-B-2030
Plaintiff, <u>pro se</u>
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

HON. LETITIA JAMES                        DAVID C. WHITE, ESQ.
Attorney General for the                  Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff <u>pro se</u> Denny DeJesus ("DeJesus" or "Plaintiff"), an inmate who was at all

relevant times in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS") brings this action pursuant to the 42 U.S.C. § 1983

against defendants Director of Special Housing Unit/Inmate Disciplinary Program Donald

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

Venettozzi ("Venettozzi") and Captain Corey ("Corey") for violations of his constitutional

rights under the Fourteenth Amendment.  See Dkt. No. 1 ("Compl.").  In lieu of an answer,

Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.

R. Civ. P."), to dismiss the complaint.  See Dkt. No. 14.  DeJesus opposed the motion[2] (Dkt.

No. 16), and Defendants responded (Dkt. No. 19).  For the following reasons, it is

recommended that Defendants' motion to dismiss be denied.

## I.  BACKGROUND

The facts are related herein in the light most favorable to DeJesus as the non-moving

party.  See subsection II(A) infra.  At the relevant time, DeJesus was confined at Marcy

Correctional Facility ("Marcy C.F.") and Upstate Correctional Facility ("Upstate C.F.").  See

Compl. at ¶¶ 9, 34.

On March 9, 2017, while DeJesus was incarcerated at Marcy C.F., he received a

misbehavior report ("First MBR") charging him with violations of the standards of inmate

behavior in relation to an assault that occurred on March 8, 2017.  See Compl. at ¶¶ 9-11.

On March 10, 2017, DeJesus received another misbehavior report ("Second MBR"),

charging him with additional violations related to the same assault.  Id. at ¶¶ 12, 13.

On March 13, 2017, a Tier III hearing commenced related to the First MBR.  See

Compl. at ¶14.  On March 15, 2017, following testimony, the hearing officer found DeJesus

"not guilty" on all charges.  Id. at ¶ 15.

On March 15, 2017, approximately one hour after the first hearing was completed, a

---

[2]  In his opposition, Plaintiff states, "appointment of counsel is needed to develop the necessary record."  Dkt. No. 16 at 6.  Plaintiff is advised that should he seek the appointment of counsel, he must do so by way of a properly filed motion.

Tier III hearing commenced related to the Second MBR, with defendant Corey presiding. Compl. at ¶ 16. DeJesus explained to Corey that he had been found "not guilty" in the earlier hearing and provided Corey with a copy of the disposition form. Id. at ¶¶ 20, 21. Over DeJesus' objection, Corey proceeded with the hearing. Id. at ¶ 23. On March 30, 2017, Corey found DeJesus guilty of the charges and sentenced him to 270 days in the Special Housing Unit ("SHU") with a loss of telephone privileges, packages, recreation, and commissary. Id. at ¶ 24. Corey also imposed three months loss of good time credits. Id.

On April 6, 2017, DeJesus submitted an administrative appeal, and, on June 8, 2017, defendant Venettozzi affirmed Corey's disciplinary determination. See Compl. at ¶¶ 26-28. On August 24, 2017, DeJesus filed an Article 78 petition challenging the disciplinary determination. See id. at ¶ 30. On November 22, 2017, DeJesus' petition was granted, the disciplinary determination was reversed, and the misbehavior report was expunged from his record. See id. at ¶ 31.

DeJesus spent 203 days in the SHU, and lost privileges for the full 270-day sentence. Compl. at ¶ 34 at 15. During his incarceration in the SHU at Upstate C.F., DeJesus was confined to his cell for twenty-four hours a day, with a cell mate. See id. at ¶ 34. DeJesus was permitted out of his cell, in mechanical restraints, for "call-outs," medical and mental health visits, and cell searches. Id. DeJesus was permitted to use the telephone after serving thirty days, but only for fifteen minutes. See id. DeJesus waited another sixty days to make another telephone call. See id. Initially, DeJesus had one visit each week, and "when [he] turned level 3,[3]" he was given two visits per week. Id.

---

[3] Plaintiff attained "Level 3" after 90 days in the SHU. See Compl. at ¶ 34.

3

DeJesus was permitted three showers per week – eventually increasing to four showers per week – and he was allowed to purchase "$5.00 of snacks every thirty days." Compl. at ¶ 34. DeJesus was allotted two hours of recreation "in a cage behind [his] cell," an area of approximately 10 feet by 15 feet, which DeJesus shared with his cell mate. Id. DeJesus was denied "personal clothing" except for a pair of shorts and sneakers "once [he] turn[ed] level 3." Id.

Prior to his SHU confinement, DeJesus was housed in "regular population" at Marcy C.F., a "medium" security facility. Dkt. No. 16 at 7. DeJesus was permitted to "get on the phone in the dorm anytime" between 7:30 a.m. and 10:00 p.m. See Compl. at ¶ 35. In the dorm, DeJesus had access to a radio, tape player, television, board games, a recreation room, microwave, hot pot, toaster, stove, and pots/pans. Id. DeJesus could shower "daily" and go "to the yard 3 times a day," where he was permitted to use weights, participate in sports, and interact with other inmates. Id.

DeJesus alleges that Corey and Venettozzi deprived him of his due process rights in violation of the Fourteenth Amendment. See generally Compl.

## II. DISCUSSION[4]

Defendants move to dismiss the Complaint, arguing that DeJesus' Fourteenth Amendment claims fail to state a cause of action because his SHU confinement did not invoke a protected liberty interest. See Dkt. No. 14.

### A. Legal Standard

---

[4] All unpublished opinions cited by the Court in this Report–Recommendation, unless otherwise noted, have been provided to plaintiff.

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face."  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."));  see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal quotation marks and citation omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

5

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law....

Treistman, 470 F.3d at 477 (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

## B. Due Process

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law."  U.S. CONST. AMEND. XIV § 1.  However, due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted).  In determining whether segregated confinement violates an inmate's due process rights, the court must consider: "(1) whether the plaintiff had a protected liberty interest in not being confined . . . and, if so; (2) whether the deprivation of that liberty interest occurred without due process of law." Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000) (quoting Sealey v.

6

Giltner, 116 F.3d 47, 51 (2d Cir. 1997)).  In this case, Defendants' motion rests solely on whether DeJesus has established a liberty interest in being free from SHU confinement.

An inmate has a protected liberty interest in being free from segregated confinement if he can make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship.  See Sandin v. Connor, 515 U.S. 472, 483-84 (1995); Tellier, 280 F.3d at 80 (quoting Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996)).  Among the factors to be considered in determining whether confinement is atypical include,"(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement."  Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998) (citing Sandin, 515 U.S. at 484).  Although not dispositive, the duration of a disciplinary confinement is a significant factor in determining atypicality.  See Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted).

No firmly established, bright-line rule exists to determine the length or type of sanction that rises to the level of atypical and significant hardship.  See Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (citations omitted).  Instead, the Second Circuit has provided guidelines that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required."  Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004) (quoting Colon, 215 F.3d at 232).  Conversely, where an inmate is confined under

7

normal SHU conditions[5] for a duration in excess of an intermediate disposition, the length of

the confinement itself is sufficient to establish atypicality.  See id. at 65 (citing Colon, 215

F.3d at 231–32).

Here, DeJesus alleges that he was held in the SHU for 203 days, which is an

intermediate amount of time.   This length of SHU confinement cannot alone determine that

the confinement was atypical and significant.  Therefore, the Court examines whether the

confinement is atypical and significant by comparing the conditions of DeJesus' SHU

confinement with ordinary prison conditions.  See Vasquez v. Coughlin, 2 F.Supp.2d 255,

259 (N.D.N.Y. 1998).

DeJesus alleges that his SHU confinement deprived him of recreation, movement, and

communication or interaction with his family.  See Compl. at ¶ 34.  DeJesus claims that his

"recreation" time was spent in "a cage behind [his] cell" measuring "15 by 10 feet" and that

he was forced to share the area with his cell mate.  Id.  In an affidavit submitted in

opposition to the motion, DeJesus asserted additional factual allegations related to his SHU

confinement.  DeJesus claims that he was "deprived of his personal property, grooming

equipment, hygiene products, limited reading material, no personal food, no vitamin

supplements, limited family pictures and no personal mail."  Dkt. No. 16 at 11; Dkt. No. 16-2

at 1-2.  DeJesus also asserts that he was forced to use the toilet and shower in his cell

mate's presence.  See Dkt. No. 16-2 at 1-2.

The Court recognizes that the affidavit contains additional factual allegations that are

---

[5]  Courts have described "normal conditions of SHU confinement" as follows: placed in a solitary
confinement cell, kept in a cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day,
limited to two showers a week, denied the opportunity to work and obtain schooling, and limited visitation and
books.  See Colon, 215 F.3d at 230.

not contained within the Complaint.  Although, generally, the Court may not look outside the

pleadings when deciding a motion to dismiss,"the mandate to read the papers of pro se

litigants generously makes it appropriate to consider a plaintiff's paper in opposition to a

defendant's motion to dismiss as effectively amending the allegations of the plaintiff's

complaint, to the extent that those factual assertions are consistent with the allegations of

the plaintiff's complaint."  Robles v. Bleau, No. 07-CV-0464 (TJM/GHL), 2008 WL 4693153,

at *6 & n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases); Cusamano v. Sobek, 604 F.Supp.

2d 416, 461 (N.D.N.Y. 2009).  Although DeJesus did not cross move to amend his

complaint, "[b]ecause no answer had been filed, however, it [is] permissible for the plaintiff[]

to present the allegations of the affidavit as an amendment to the complaint in response to

the 12(b)(6) motion."  Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 26

(2d Cir. 1988) (citation omitted).

   In cases such as this, involving an intermediate duration of SHU confinement, "the

fact-finding required by the Second Circuit to determine whether this intermediate sentence

constitutes an atypical and significant hardship cannot occur on a motion to dismiss."  Koehl

v. Bernstein, 10 Civ. 3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (collecting

cases), report and recommendation adopted, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).

The Second Circuit has stated:

> In the absence of a detailed factual record, we have affirmed
> dismissal of due process claims only in cases where the period
> of time spent in SHU was exceedingly short—less than the 30
> days that the Sandin plaintiff spent in SHU—and there was no
> indication that the plaintiff endured unusual SHU conditions.

Palmer, 364 F.3d at 65; see Davis v. Barrett, 576 F.3d 129, 135 (2d Cir. 2009) ("A detailed

factual record containing information as to the actual conditions in both administrative

9

segregation and for the general population is necessary for the court to make the type of

comparison required."); see also Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997) ("[T]he

decision in Sandin entailed careful examination of the actual conditions of the challenged

punishment compared with ordinary prison conditions.").

At this juncture, DeJesus has alleged enough facts to plausibly state a liberty interest.[6]

See Palmer, 364 F.3d at 66; see also Jackson v. Relf, No. 9:19-CV-00193 (MAD/TWD),

2020 WL 3038607, at *6 (N.D.N.Y. Jan. 6, 2020) (denying motion to dismiss where the

plaintiff alleged, "he was not given his property for 4 days and when he got his propert[y]

many of his possession[s] were missing," including "a walkman, clippers, slippers and

clothes" as a result, the plaintiff "was forced to wash up in the sink, for 18 days"), report and

recommendation adopted, 2020 WL 1025297 (N.D.N.Y. Mar. 3, 2020) (citing Smith v.

Hamilton, No. 9:15-CV-0496 (BKS/ATB), 2016 WL 3823395, at *4 (N.D.N.Y. July 12, 2016)

(denying motion to dismiss due process claim reasoning, "[i]t is not clear, [. . .] that the

'deprivation of most of [plaintiff's] personal property' was a normal SHU condition.")); Lewis

v. Murphy, No. 9:12-CV-268 (NAM/CFH), 2013 WL 4520850, at *8 (N.D.N.Y. Aug. 26,

2013) (denying motion to dismiss where the plaintiff alleged that his sixty-day SHU

confinement deprived him of movement and participation in various programs and

activities).  Given the lengthy duration of DeJesus' confinement and his allegations

comparing the conditions in the Upstate C.F. SHU to his "ordinary prison conditions" in

Marcy C.F., a detailed record of the conditions in the SHU in comparison with ordinary

---

[6] DeJesus cannot rely upon his three month loss of good time credits to establish a liberty interest because the disciplinary determination was reversed and expunged from his record.  See Dkt. No. 16 at 9; see Williams v. Chuttey, No. 9:15-CV-1278 (GLS/ATB), 2017 WL 9673722, at *6 (N.D.N.Y. Sept. 5, 2017) (collecting cases), report and recommendation adopted, 2018 WL 1413049 (N.D.N.Y. Mar. 21, 2018), aff'd, 767 F. App'x 105 (2d Cir. 2019).

prison conditions in Upstate C.F. is necessary.  See generally Hamilton v. Deputy Warden, No. 15-CV-4031, 2016 WL 6068196, at *10 (S.D.N.Y. Oct. 13, 2016) ("In light of Hamilton's allegations of a lengthy duration of confinement [. . .] and significant differences from general population conditions, his claims preclude dismissal at this time.").  It is not clear from the face of the complaint, the motion to dismiss, or the opposition papers whether the conditions plaintiff faced in SHU were "normal" SHU conditions.  Smith, 2016 WL 3823395, at *3-4.

Accordingly, it is recommended that Defendants' motion to dismiss the Complaint be denied.  See Sims v. Artuz, 230 F.3d 14, 19 (2d Cir. 2000) ("It may be that discovery will reveal that such conditions were not imposed or that they were not atypical; but we cannot say that the complaint itself shows that [plaintiff] can prove no set of facts that would entitle him to relief.").

### III.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 14) be **DENIED**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984

F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Services</u>, 892

F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[7]

**IT IS SO ORDERED**.

Dated: July 19, 2021

Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. <u>See</u> FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(c).